STATE of Minnesota, Appellant,

v.

Peter Eldon KVAM, Respondent.

No. C1–82–1596.

Supreme Court of Minnesota.

July 22, 1983.

Grannis, Grannis, Campbell & Farrell and Thomas M. Scott, South St. Paul, for appellant.

Alton, Severson, Sovis & Groves, Michael V. Sovis and Paul M. Begich, Apple Valley, for respondent.

TODD, Justice.

This is a pretrial appeal by the state, pursuant to Minn.R.Crim.P. 29.03, from an order of the district court suppressing evidence and then dismissing the prosecution of the defendant for the gross misdemeanor offense of aggravated driving while under the influence, Minn.Stat. § 169.121, subd. 3(a) (1982). The basic issue raised is whether the trial court erred in ruling that the police violated defendant's Fourth Amendment rights in stopping him. We reverse and remand for trial.

The state's sole witness at the omnibus hearing was Officer Mark Robideau of the Rosemount Police Department. He testified that at 12:05 a.m. on July 7, 1982, he was facing westbound on 147th Street at the intersection with Highway 3 when he looked to his right at a 45-degree angle and saw defendant's car, an El Camino, pull out of the parking lot of the Shamrock Municipal Liquor Store "kind of fast" and make a "very wide" right turn onto Highway 3 southbound. He testified on direct that he saw another southbound car, a Rabbit, pull over onto the shoulder to avoid being hit and saw defendant's car pull completely into the northbound lane, where it remained for about a block before getting back into the appropriate southbound lane. On cross-examination the officer was asked if it was not true that defendant's car simply passed the Rabbit in a place where passing was not barred. The officer's response was that he was not "positive," that the Rabbit "basically just kind of pulled off to the side like it * * * wanted to let the other car go," and that he was not "sure what the problem was." However, he added that it looked from his angle like the Rabbit was "forced off the road," and that

"it pulled over real quickly to avoid being hit."

He testified that he followed the car about one-fourth of a mile to Highway 42, where defendant turned and began driving westbound. He testified that, following directly behind defendant, he observed that defendant's car was "weaving within its lane" on Highway 42. He testified that after about a half a block of this he turned on his red lights but not his siren. He testified that defendant continued for an estimated one-half to three-quarter miles until he pulled into the driveway of his residence.

There defendant got out and met Officer Robideau half way between his car and the squad car. The officer testified that defendant had trouble walking and that his eyes were bloodshot and glassy. He testified that when he asked defendant for his license, defendant walked back to his car and fooled around for 20 to 30 seconds before producing it. Officer Robideau checked it and found that it was valid; he also learned that defendant had been convicted of DWI in 1978.

The officer then ordered defendant to get into the squad car, where he smelled a strong odor of alcohol coming from defendant. He testified that he read an implied consent advisory to defendant and defendant said he wanted to call his attorney. He testified that defendant commented several times—at least once before the implied consent advisory was given and two or three times before the *Miranda* warning was given—that he knew he was loaded and that he did not blame the officer for what he was doing but wondered if he could not let him go since he was already home. The officer testified that these statements were not in response to any questions. The officer testified that he overheard defendant subsequently make a similar statement to his attorney when he was talking to him on the telephone. After defendant talked with his attorney, he stated that he would not submit to chemical testing. It was then that he was given a *Miranda* warning.

Defendant, the only other witness, did not testify concerning his driving conduct other than to say that he left the liquor store, drove south on Highway 3 to Highway 42 and west on Highway 42 to his residence. He testified that he said he was "hammered" or "loaded" only once, that being when he was on the telephone talking with his attorney.

Defendant's attorney argued that the stop was improper because defendant had not done anything illegal but had simply passed another car in an area where passing was not prohibited. He argued that the officer's testimony that indicated that defendant forced another car off the road was not reliable because the officer's angle of vision was not good. He argued that the real reason the officer stopped defendant was because he saw defendant's car leaving the liquor store parking lot. Alternatively, he argued that at least defendant's statement that he was "hammered" should be suppressed on the ground that the officer did not give defendant an opportunity for a confidential telephone conversation with his attorney.[1]

The court subsequently issued an order dismissing the prosecution and filed a memorandum stating in full as follows:

The warrantless arrest in this case was not founded on either an offense committed in the officer's presence or upon specific and articulable suspicions of a statutory violation so as to authorize the stop made in this case. From that, all evidence was obtained in violation of the defendant's constitutional rights and is

---

1. The prosecutor argued that although the state could not use any statement defendant made while talking to his attorney, the state should be able to use the same statement if it was also made earlier. The court rhetorically expressed some doubt about this. *State, Department of Public Safety v. Kneisl*, 312 Minn. 281, 251 N.W.2d 645 (1977), supports the view that the statement which the officer overheard defendant make to his attorney cannot be used but does not imply that the officer is barred from testifying as to any volunteered statements that defendant made earlier, if in fact defendant made those statements earlier.

incompetent as evidence to sustain the State's probable cause burden.

The court made no express findings of fact.

 Whether an automobile stop is valid depends on whether the police who made the stop are able to articulate at the omnibus hearing that they had a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). *See also Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975). In applying this standard, the court should consider the totality of the circumstances and should remember that trained law-enforcement officers are permitted to make "inferences and deductions that might well elude an untrained person." *United States v. Cortez,* 449 U.S. at 418, 101 S.Ct. at 695.

If the district court had made findings, as it should have, it would be easier to review the court's decision. We have stressed that at a pretrial suppression hearing the trial court "acts as finder of facts, deciding for purposes of admissibility which evidence to believe and whether the state has met its burden of proof." *State v. LaFrance,* 302 Minn. 245, 246, 223 N.W.2d 813, 814 (1974). *And see* Minn.R.Crim.P. 11.07. As this case illustrates, one of the main reasons for requiring findings is to make it "possible to ascertain from the record the basis for the trial court's ruling." *State v. Rainey,* 303 Minn. 550, 550, 226 N.W.2d 919, 921 (1975).

In some cases we have concluded that a remand for findings is necessary before we will decide the validity of the lower court's order. *State v. Wicklund,* 295 Minn. 402, 201 N.W.2d 147 (1972); *State v. Kinn,* 288 Minn. 31, 178 N.W.2d 888 (1970). In other cases we have decided the appeal notwithstanding the lack of findings. Where we have been able to infer the findings from the trial court's conclusions, we have not remanded. An example is *State v. Rainey,* 303 Minn. 550, 226 N.W.2d 919 (1975), where there was no conflict in the evidence and the trial court's conclusions were consistent with the evidence. Similarly, if we can say in a particular case that even if the defendant's testimony was true there was no violation of the defendant's rights, then we can decide the issue on that basis without remanding.

In this case the district court simply issued a two-sentence conclusory memorandum, only one sentence of which bears on the issue that concerns us. Specifically, the court stated, "The warrantless arrest in this case was not founded on either an offense committed in the officer's presence or upon specific and articulable suspicions of a statutory violation so as to authorize the stop made in this case." It is not clear from this whether the court (a) credited all of the officer's testimony but concluded that it did not support the stop, (b) credited only part of the testimony and concluded that the part credited did not justify the stop, or (c) rejected all of the officer's testimony.

If (a), then the stop was clearly valid, the officer having observed an actual violation.

If (b)—that is, if the district court rejected the testimony of Officer Robideau that he saw an actual violation but did not reject the testimony concerning the weaving— then the stop was also valid. This is because we have held that if an officer observes a driver weaving within his lane in an erratic manner, as Officer Robideau testified that he saw defendant do, then the officer is justified in stopping the driver to investigate the cause of the problem. *State v. Ellanson,* 293 Minn. 490, 198 N.W.2d 136 (1972). This is particularly true in a case in which the driver has also just been seen leaving the parking lot of a liquor store.

If (c), then the conclusion that the stop was illegal was justified but there would be an issue as to whether the court was justified in rejecting the officer's testimony completely.

 We could remand for findings, but if the trial court then rejected all of the officer's testimony, the case would likely be appealed again by the state for a determination of whether the court was justified in doing that. In deciding this issue, we

would have to decide whether the finding that the officer observed nothing unusual was clearly erroneous. *Compare State v. Dillon,* 308 Minn. 464, 242 N.W.2d 84 (1976) (holding that the trial court did not clearly err in disbelieving the police officer) *with State v. Hodgman,* 257 N.W.2d 313 (Minn. 1977) (holding that the trial court clearly erred in its crucial finding on which the suppression order was based). A trial court's finding is erroneous if this court, after reviewing the record, reaches the firm conviction that a mistake was made. After reviewing the record in connection with this appeal, we have reached the firm conviction that it would be a mistake to reject entirely the officer's testimony. In the interests of judicial economy, we therefore have decided against remanding for express findings; instead, we reverse and remand for trial.

Respondent is allowed $400 attorneys fees on this appeal.

Reversed and remanded for trial.