STATE of Minnesota, Respondent,

v.

Kevin R. GIEBENHAIN, Appellant.

No. C4–85–103.

Court of Appeals of Minnesota.

Oct. 1, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul Kempainen, Asst. Atty. Gen., St. Paul, Earle T. Anderson, Jr., Golden Valley, for respondent.

Phillip G. Villaume, James LaFave, Phillip G. Villaume & Assoc., St. Paul, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

On January 7, 1984, at approximately 2:20 a.m., Robert Hallick and Larry Robberstad, two volunteer firemen, were walking in a parking lot to the south of the fire hall in Maple Grove. As the two walked, they heard "a loud banging noise" coming from the vicinity of a grocery store across the parking lot from the fire hall. Thinking that someone was breaking into the store, Hallick returned to the fire station to contact the police. As he was going to the fire station he and Robberstad observed a four-wheel-drive pickup leaving the parking lot. He called the police and reported that he suspected the grocery store was being burglarized. He also informed the police about the pickup truck seen leaving the site.

The police arrived and began investigating the businesses for any signs of a break-in. Before the officers' investigation of the building was complete, and before they had discovered anything which would confirm that there was actually a break-in, appellant drove a pickup truck into the parking lot in front of the police. Appellant did not

speed into the lot, squeal his tires, nor drive in any erratic manner. However, believing the pickup truck might have been involved in the reported burglary, one officer stopped the truck to investigate the driver's relationship to the possible burglary.

Appellant, who was driving the truck, had nothing to do with a burglary. As a matter of fact, no burglary was committed. Nevertheless, appellant's eyes were bloodshot and the officer smelled alcohol on his breath. Shortly thereafter, Kevin Giebenhain was arrested and charged with gross misdemeanor driving under the influence, careless driving, open bottle, possession of marijuana, violating a driver's license restriction, and possessing drug paraphernalia in violation of a Maple Grove ordinance.

Appellant moved to dismiss for lack of probable cause and to suppress any evidence seized as a result of the search that appellant claimed was illegal. Appellant argued that the officers had no reason to suspect him of being intoxicated because they admitted that appellant had not driven erratically. On November 7, 1984, a hearing was held and the court denied appellant's motion. On December 10, 1984, appellant waived a jury trial, stipulated to the facts in the police report, and, on December 12, 1984 sought review of the judgment entered. On appeal, appellant renews his claim that the officers had no right to stop and question him.

## ISSUE

Were the police justified in stopping appellant's vehicle?

## ANALYSIS

The beginning point for our analysis must be *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There, the Supreme Court, relying on the fourth amendment prohibition against unreasonable searches and seizures, set the standard for investigatory stops similar to the stop in our case. The Court stated that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1879. The Court defined this standard further in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). There, the court stated that two elements must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. Second, this assessment must yield a particular suspicion that the individual being stopped is engaged in wrongdoing. *Id.* at 418, 101 S.Ct. at 695.

■ Minnesota courts have followed this analysis. In *State v. Kvam*, 336 N.W.2d 525 (Minn.1983) the Minnesota Supreme Court stated that "[w]hether an automobile stop is valid depends on whether the police who made the stop are able to articulate at the omnibus hearing that they had a 'particularized and objective basis for suspecting the particular persons stopped of criminal activity.'" *Id.* at 528 (quoting *United States v. Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 694–95). As the court stated in *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975), " '[a]ll that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.'" *Id.* at 304, 232 N.W.2d at 911 (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 330 N.E.2d 39, 44, 369 N.Y.S.2d 67, 74 (1975)); *see Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985).

■ Appellant argues that the police stop was invalid. He points to the fact that the police had merely been informed that there *might be* a burglary taking place. He also argues that the officers were merely told that the informants had seen a pickup truck in the general area. The police were not informed that there definitely was a burglary nor that burglars were seen in a pickup truck. Finally, he argues that the police investigation had proven fruitless when he arrived at the scene. Because of these facts, appellant argues the stop was invalid.

We find appellant's argument unpersuasive. When one views the events as they unfolded to the officers, it is clear that the police stop was valid. The officers had been called after 2:00 a.m. by two volunteer firemen who heard suspicious noises and suspected a store was being robbed. The officers were further informed of a pickup truck that was seen leaving the area of the suspected burglary. As the officers were investigating the scene, appellant entered the parking lot in a pickup. Because none of the stores which used the parking lot were open, appellant's presence in the lot was suspicious. Although the officers had no reason to believe appellant was guilty of any of the crimes he was ultimately convicted of, the stop certainly was not the product of a mere whim. Given the totality of the circumstances, the police clearly had a reasonable suspicion that appellant was involved in criminal activity.

### DECISION

Because the police officers had a reasonable suspicion that appellant was involved in a burglary, the stop was valid. Therefore, we affirm.