**STATE of Minnesota, Respondent,**

v.

**Earnest Earl RANDLE, Appellant.**

**No. C3–85–965.**

Court of Appeals of Minnesota.

Feb. 11, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Darrell C. Hill, Steven C. DeCoster, Asst. Ramsey Co. Attys., St. Paul, for respondent.

William E. Falvey, Chief Public Defender, Charles H. Williams, Jr., Asst. Public Defender, St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

After a trial to the court on a stipulated record, appellant Earnest Randle was convicted of aggravated forgery in violation of Minn.Stat. § 609.625, subd. 1(1) (1984) and uttering a forged instrument in violation of Minn.Stat. § 609.625, subd. 3 (1984). On appeal, Randle challenges the validity of the initial investigatory stop. We affirm.

## FACTS

Randle was convicted of forging a check with Hestoria Smith for the purpose of buying a video cassette recorder from the Sound of Music store in Roseville, Minnesota.

At the omnibus hearing, Officer Robert Hawley testified that on September 25, 1984, at approximately 8:00 p.m., he was in an unmarked squad car patrolling the Har Mar Mall parking lot in Roseville. At that time, he observed an older model Cadillac parked with the engine running in the fire lane near one of the mall's west entrances. There was a black woman sitting in the driver's seat and a black man sitting in the front passenger's seat. Hawley testified that, after he drove by the car, he turned around to go back and tell the driver to move out of the fire lane. He also testified that for no particular reason he wanted to run a registration check on the car.

Before he could ask the driver to move, a black woman and a black man came out of the mall and got into the back seat of the car and the car started to slowly proceed

south through the parking lot. Hawley began to follow the car. It then crossed Snelling Avenue, entered the front parking lot of a Mr. Donut and parked for three to four minutes with the engine running. At that time, a marked squad car was parked behind Mr. Donut. Hawley testified that the marked car was visible from where the car was parked. The car then circled through both the Mr. Donut parking lot and the Arby's parking lot which is located just north of Mr. Donut.

Meanwhile, Hawley had parked in the Rocky Rococo's parking lot which is north of Arby's. A small shopping center and another building are between Arby's and Rocky Rococo's. A Sound of Music store is located in the small shopping center.

The car then drove through the shopping center's parking lot and parked with the engine running across from Hawley in Rocky Rococo's parking lot. Hawley saw the two passengers in the back seat of the car get out and enter the Sound of Music store.

Hawley then ran a registration check on the car which indicated that there was a minor parking warrant on the car. Hawley also informed Officer Daniel Sommerdorf (who was in the marked squad car in Mr. Donut's parking lot) of his observations. Sommerdorf remained in the area in case his assistance was needed.

Hawley also had the dispatcher at the Roseville Police Department call Sound of Music and inquire about what the couple was purchasing. Hawley was informed that the couple had purchased a video cassette recorder with a personal check in the name of Eva Thorson, and the female purchaser used a Minnesota non-qualification identification card for identification. Hawley was further informed that the Sound of Music salesperson cleared the check through a credit checking system which verifies that a checking account has sufficient credit to cover the check. Hawley had the dispatcher at the Roseville Police Department request that the salesperson call Eva Thorson for further verification.

The salesperson told the dispatcher that he would not make the call.

While the couple was in the Sound of Music store, the other passenger in the car got out and walked towards McDonald's which was south of Mr. Donut. The driver proceeded into the shopping center's parking lot and parked in front of the Sound of Music store. The man who had walked towards McDonald's returned to the car. The couple that was in the Sound of Music store came out carrying a large box and got in the car.

Hawley then requested Sommerdorf to stop the car for an identification check to determine whether the woman who bought the video cassette recorder was Eva Thorson. Hawley testified that, in his sixteen years as a police officer in Roseville, he has taken numerous reports of forgery and shoplifting in the Har Mar area. He explained that, based on his observations of the car and his past experience in the area, he was suspicious of the way the driver drove in and out of parking lots and of how no one got out of the car in the Mr. Donut lot after the occupants saw the marked squad car there.

Sommerdorf stopped the car in the shopping center parking lot just north of the Sound of Music store. Sommerdorf testified that the driver produced a valid driver's license. He asked the passengers in the back seat for their identification. They did not respond to his request. Sommerdorf then told the driver that he would probably have to have the car towed and get a search warrant. The driver told the female passenger to give Sommerdorf her identification. The woman gave Sommerdorf a checkbook with the name of Eva Thorson. When Sommerdorf told the woman that the checkbook was not sufficient identification, she responded that she had thrown her identification on the ground. Eva Thorson's identification card was found in the parking lot. The woman then identified herself as Hestoria Smith. The two men verbally identified themselves. The man in the back seat identified himself as Earnest Randle.

Smith and Randle were then arrested. The new video cassette recorder, a tape cleaner, a sales slip from the Sound of Music store, a checkbook and credit cards in Eva Thorson's name were seized from the car. Subsequently, Smith gave an incriminating statement to Hawley, and both Smith and Randle gave incriminating statements to a Roseville police department investigator.

Following the omnibus hearing, the trial court determined that the police officers made a valid investigatory stop and arrest, and Randle's and Smith's statements as well as the evidence seized from the car were admissible.

The parties then submitted the case to the court based upon a stipulated record. The trial court found Randle guilty of aggravated forgery and uttering a forged instrument.

### ISSUE

Did the trial court err in concluding that the police officers made a valid investigatory stop?

### ANALYSIS

Randle asserts that the stop which led to his arrest was illegal.

■ The test for determining the legality of a stop of a motor vehicle is whether the police officer had a particularized and objective basis for suspecting the driver or passengers of criminal activity. *State v. L'Italien*, 355 N.W.2d 709, 710 (Minn.1984) (citing *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In applying this standard, we must consider the totality of the circumstances and recognize that "trained law-enforcement officers are permitted to make 'inferences and deductions that might well elude an untrained person.'" *State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983) (quoting *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695).

The trial court determined that the police officers in this case had a sufficient basis for suspecting the occupants of the car of criminal activity. The trial court based its decision on Hawley's experience as a police officer, the nature of the Har Mar area, Hawley's knowledge of the crime patterns in the area, the time of day, the fact that someone was in the car with the engine running at all times, the movements of the car and the other actions of its occupants, and the nature of the purchase at Sound of Music.

■ At a pretrial suppression hearing, the trial court acts as a fact finder, "deciding for purposes of admissibility which evidence to believe and whether the state has met its burden of proof." *State v. LaFrance*, 302 Minn. 245, 246, 223 N.W.2d 813, 814 (1974) (quoted in *Kvam*, 336 N.W.2d at 528). We will not disturb a trial court's findings unless they are clearly erroneous. *See Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985). A trial court's finding is erroneous if this court, after reviewing the record, reaches the firm conviction that a mistake was made. *Kvam*, 336 N.W.2d at 529.

■ We cannot conclude that the trial court clearly erred in determining that Officer Hawley had a sufficient basis for the stop. Considering all the circumstances surrounding the stop, we cannot say that the stop was the product of mere whim, caprice or idle curiosity. *See Marben v. Department of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)).

Randle asserts that the stop was motivated by the fact that the occupants of the car were black. In *State v. Mallory*, 337 N.W.2d 391, 393 (Minn.1983), the defendant also argued that a stop was motivated by racial prejudice. In *Mallory*, the supreme court stated:

> We do not believe that this is an appropriate case in which to attempt to address in detail the issue of when race is a valid factor in a police officer's decision to investigate, approach, stop, detain and/or arrest a person. * * * Suffice it to say, our examination of the records satisfies us that there was a particular-

ized and objective basis for suspecting the occupant(s) of the car of criminal activity, and accordingly we conclude that the stop was valid.

*Id.* at 393–94 (footnote omitted).

Here, the trial court cited a number of legitimate factors in determining that there was a particularized and objective basis for suspecting the occupants of the car of criminal activity. Our examination of the record satisfies us that the trial court did not err in reaching this determination. Therefore, consistent with the rationale set forth by the *Mallory* court, we do not address whether race is a valid factor for a stop.

 Following the stop, Smith's conflicting identification together with the circumstances leading up to the stop gave rise to sufficient probable cause to make the arrests. *See State v. Eling*, 355 N.W.2d 286, 290 (Minn.1984).

## DECISION

The trial court did not clearly err in concluding that the police officers made a valid investigatory stop.

Affirmed.