*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1163**

State of Minnesota,
Respondent,

vs.

Elliott Patrick Ketz,
Appellant.

**Filed August 17, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1222032

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant); and

Timothy Droske, Tiana Towns, Special Assistant Public Defenders, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant Elliott Patrick Ketz contends that his conviction should be reversed because (1) the district court erred in denying his motion to suppress the evidence; (2) the methamphetamine discovered during the search should not have been admitted into evidence because the state did not properly establish its chain-of-custody; (3) the evidence is insufficient to support his conviction for the sale offense; and (4) the district court abused its discretion by imposing a 189-month sentence. We affirm.

## FACTS

Officer Bartholomew and Sergeant Robinson, two undercover Minneapolis officers, were working in North Minneapolis on July 10, 2012, at around 10:30 p.m. when they observed a vehicle parked in the middle of an alley with its lights off. The officers proceeded down the alley towards the parked vehicle in their unmarked SUV. As they got closer, the driver of the vehicle turned the vehicle's headlights on and pulled forward so that the SUV could pass. The driver was later identified as T.T.

The officers drove by and noticed a man standing next to an unoccupied vehicle in the driveway adjacent to the alley. Officer Bartholomew observed the man pull on the passenger door handle of the vehicle and that the man was holding a small bag in his other hand. He then saw the man "sprint" back to T.T.'s vehicle and the vehicle "sped away at a high rate of speed." Officer Bartholomew alerted other officers of a possible automobile theft in progress and provided the license plate number and description of T.T.'s vehicle. The man was later identified as appellant.

The two undercover officers followed the vehicle. At that time, uniformed Officers Tidgwell and Tucker spotted T.T.'s vehicle and activated the emergency lights in their marked squad car to initiate a traffic stop. As they drove behind T.T.'s vehicle, Officer Tidgwell observed appellant talking to T.T. and leaning forward in his seat "bent over at the waist," appearing as though he was maneuvering his hands underneath the seat. The vehicle did not stop right away and instead turned right at an intersection and continued for a short distance before pulling over. Officers Pucely and Yang arrived in another marked squad car to assist.

As Officer Tidgwell approached the passenger side of the vehicle, he noticed that appellant was still moving around in his seat. Officer Tidgwell yelled for him to put his hands up but appellant continued moving his hands around and reaching down underneath the seat. Appellant was ordered to show his hands and get out of the vehicle multiple times before he complied. Officer Tidgwell and two other officers pulled him out of the vehicle, brought him back to the squad car, and handcuffed him.

Officer Pucely searched the area around the front passenger seat. He discovered a small blue bag underneath the seat where appellant had been sitting. The bag contained three packages of suspected methamphetamine, a small bag of suspected marijuana, a glass pipe, a small spoon, and a digital scale. All three packages containing suspected methamphetamine field-tested positive for methamphetamine. Officer Pucely weighed the three samples which revealed their respective weights with packaging as 10.5 grams, 0.7 grams, and 9.3 grams for a total of 20.5 grams. Appellant was charged with one count of first-degree sale of a controlled substance in violation of Minn. Stat. § 152.021,

subd. 1(1) (2010), and one count of second-degree possession of a controlled substance in violation of Minn. Stat. § 152.022, subd. 2(a)(1) (2010).

Prior to trial, appellant moved to suppress the evidence, arguing that the stop was not supported by a reasonable, articulable suspicion and that the search exceeded the scope of the initial stop. The district court denied appellant's motion. The district court concluded that there was a reasonable, articulable suspicion to conduct the subsequent search of T.T.'s vehicle for a weapon based on appellant's furtive movements inside the vehicle and failure to comply with the officer's orders to show his hands and exit the vehicle. Appellant waived his right to a jury trial and the matter was scheduled for a court trial.

At trial, the district court heard testimony from T.T., appellant, Officers Bartholomew, Tidgwell, and Pucely, and a forensic scientist from the Bureau of Criminal Apprehension (BCA). T.T. testified that she picked up appellant from his residence that evening to buy methamphetamine. T.T. had previously purchased methamphetamine from appellant on two or three other occasions, and she had never possessed more than one gram at a time. Appellant denied selling methamphetamine and denied that the bag containing contraband belonged to him. Appellant testified that he was getting a ride from T.T. to run an errand.

Officer Pucely testified that after he conducted a field test of the methamphetamine, the packages were switched over to different bags by another officer in preparation for testing by the BCA. Officer Pucely had training and experience performing field tests on controlled substances. He stated that a baggie used to package

4

methamphetamine typically weighs between 0.1 grams to 0.3 grams. In his experience, the sample containing 0.7 grams (including packaging) of methamphetamine was consistent with an amount for individual use, whereas the weight of the other two samples was more consistent with an amount intended for distribution. Exhibit 3 contained the 10.5 grams and 0.7 grams of methamphetamine. Exhibit 5 contained the sample of 9.3 grams of methamphetamine. Both exhibits were received into evidence without any objection.

Myha Le, a forensic scientist from the BCA, testified that (1) Exhibit 3, also known as BCA Item No. 1, weighed 7.4 grams and tested positive for methamphetamine and (2) Exhibit 5, also known as BCA Item No. 2, weighed 5.8 grams and tested positive for methamphetamine. Both samples were weighed without packaging and totaled 13.2 grams. The BCA report corroborated Le's testimony and was received into evidence without any objection. The district court found appellant guilty of both counts and sentenced him to 189 months in prison. This appeal followed.

**D E C I S I O N**

**I.    The district court did not err in denying appellant's motion to suppress the evidence.**

Appellant argues that the district court erred when it denied his motion to suppress the evidence because (1) "there is nothing in the record" to support its finding that the officers had a reasonable, articulable suspicion that appellant was engaged in criminal activity and (2) the officers impermissibly broadened the scope of the stop when they searched T.T.'s vehicle.

5

When reviewing a district court's pretrial order on a motion to suppress evidence, "we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007). A finding of fact is clearly erroneous if, after reviewing the record, this court "reaches the firm conviction that a mistake was made." *State v. Kvam*, 336 N.W.2d 525, 529 (Minn. 1983). We review de novo a district court's determination that there existed a reasonable, articulable suspicion justifying a search. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

### A.     The seizure

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in their motor vehicles. *See Britton*, 604 N.W.2d at 87. As a general rule, a law-enforcement officer may not seize a person traveling in a vehicle without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

A law-enforcement officer may, however, "consistent with the Fourth Amendment, conduct a brief, investigatory stop" of a motor vehicle if "the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85

6

(1968))). A reasonable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch." *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted).

Officer Bartholomew testified that, in his experience, a vehicle parked in an alley with its lights out is behavior consistent with the commission of a crime. Additionally, he observed appellant standing next to an unoccupied, parked vehicle and pulling at the handle of the passenger door while holding a bag in his hand. This was an area where there had been a lot of burglaries, thefts, and robberies. Officer Bartholomew observed appellant sprint back to T.T.'s vehicle before the vehicle sped out of the alley. Based on the totality of the circumstances, we conclude that the officers had a reasonable, articulable suspicion that criminal activity was afoot and thus the *Terry* stop of T.T.'s vehicle was justified.

Appellant relies on *Britton* to argue that Officer Bartholomew's suspicion was not objectively reasonable because his "stated rationale for stopping [the] car would support stopping any car at all." 604 N.W.2d at 89. We are not persuaded. In *Britton*, two officers conducted a traffic stop of a vehicle based on the sole observation of a broken rear passenger window covered with a plastic bag. *Id.* at 86. The officer who initiated the stop testified that, in his experience, a broken window was an indication that a vehicle may have been stolen. *Id.* Upon review, the Minnesota Supreme Court explained that,

7

while deference is given to police officer training and experience, the officer's stated rationale for stopping Britton's vehicle "would support stopping any car at all with a broken window." *Id.* at 89. Accordingly, the court held that without any other articulable reasons, that observation alone was insufficient to justify the *Terry* stop. *Id.*

Unlike *Britton*, here, the district court found numerous facts in the record to support its conclusion that Officer Bartholomew had a reasonable, articulable suspicion that a possible automobile theft was in progress. As stated above, appellant was pulling on the handle of an unoccupied parked car, while another car was parked in the alley with its lights out and appeared to be waiting for appellant in a high-crime area. Officers observed appellant sprint back to that vehicle. The vehicle sped out of the alley at a high rate of speed. Each of those factors alone could be explained as completely lawful conduct and insufficient to justify Officer Bartholomew's suspicion. But taken together, we conclude that these facts establish a reasonable, articulable suspicion that criminal activity was afoot.

### B. The search

A police officer may conduct a limited pat search of a seized person for weapons on less than probable cause if he can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Gilchrist*, 299 N.W.2d 913, 916 (Minn. 1980) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). Moreover, our courts have stated "that an officer may conduct a protective search of the passenger compartment of the vehicle, limited to those areas in which a weapon may be placed or hidden" if the officer has a reasonable, articulable

8

suspicion that the person stopped is engaged in criminal activity and the officer possesses a reasonable belief, based on articulable facts, that the person is dangerous and can gain immediate access to control of a weapon. *Flowers*, 734 N.W.2d at 251 (quotation omitted). The burden is on the state to allege specific and articulable facts that establish that such objectively reasonable suspicion exists. *Id.* at 256.

In *Flowers*, the Minnesota Supreme Court concluded that officers had a reasonable, articulable suspicion that the defendant was armed where the defendant failed to immediately stop his vehicle during the traffic stop and was making several furtive movements. *Id.* at 252. Similarly, in the instant case, appellant made furtive movements while the officers were conducting a traffic stop and he failed to comply with Officer Tidgwell's request to exit the vehicle and show his hands. Officer Tidgwell testified, "I didn't know what he had in his hands. With his movements I was unable to see and I didn't know if it was a weapon or what it was." Based on the totality of the circumstances, Officer Tidgwell had a reasonable, articulable suspicion that appellant was armed and dangerous.

Appellant argues that even if there was a reasonable, articulable suspicion that a weapon was in the vehicle, once appellant was removed from the vehicle and placed in the squad car, any fear would have "dissipated by the time the search was conducted." We are not persuaded. In *Michigan v. Long*, the Supreme Court rejected a similar argument, explaining that officer safety is still at issue even "if the suspect is not placed under arrest, [because] he will be permitted to reenter his automobile, and he will then have access to any weapon inside." 463 U.S. 1032, 1052, 103 S. Ct. 3469, 3482 (1983).

9

Minnesota courts have followed the reasoning in *Long* to permit the search of a vehicle for weapons even after a suspect has been removed from the vehicle and briefly detained. *See State v. Waddell*, 655 N.W.2d 803, 810 (Minn. 2003) ("A protective search of the passenger compartment of the vehicle . . . is permissible if the officer possesses a reasonable belief, based on specific and articulable facts, that the suspect is dangerous and may gain immediate control of the a weapon."); *see also Gilchrist*, 299 N.W.2d at 916 (determining that "[t]he police officer may have reasonably been concerned that, when defendant was allowed to reenter his car after the search, he would be able to reach under the seat, pull out a gun, and start shooting"). Thus, appellant's argument lacks merit.

Because the search of T.T.'s vehicle for a weapon was supported by a reasonable, articulable suspicion, the district court did not err in denying appellant's motion to suppress the evidence discovered during the search. *See Waddell*, 655 N.W.2d at 810 ("If, while conducting a legitimate protective search of the interior of the vehicle the officer discovers other evidence of a crime, the Fourth Amendment does not require its suppression.").

## II.    The district court did not commit error that is plain and which affected appellant's substantial rights by admitting evidence of the methamphetamine.

Appellant next asserts that the district court plainly erred when it admitted evidence of the methamphetamine without properly establishing its chain of custody. Specifically, appellant argues that the complete chain of custody should have been

10

established because of the discrepancy in the weight of the methamphetamine after it was sent to the BCA.

This challenge is an objection to foundation that should have been raised at the time the evidence was introduced at trial. *See State v. Eli*, 402 N.W.2d 627, 630 (Minn. App. 1987) (explaining that defendant's challenge to the identity of the donor of a blood sample was a foundational objection that should have been raised at the time the test results were introduced). Because appellant made no objections at trial, we review for plain error. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under the plain-error test, appellant must show (1) error, (2) that was plain, and (3) that affected the appellant's "substantial rights." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). If all three prongs are satisfied, then a reviewing court must decide whether to address the error to ensure the "fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740. "[I]f we find that any one of the requirements is not satisfied, we need not address any of the others." *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011).

An error is prejudicial where there is a reasonable likelihood that the error had a significant effect on the verdict. *Griller*, 583 N.W.2d at 741. "The defendant bears the heavy burden of proving that the error was prejudicial." *Milton*, 821 N.W.2d at 809 (quotation omitted). We conclude that any purported error by the district court when it admitted evidence of the methamphetamine without establishing the complete chain of custody did not affect appellant's substantial rights.

First, although the BCA test results revealed a weight of 13.2 grams of methamphetamine rather than the 20.5 grams determined during the field test, the

amounts still met the threshold amounts required to be convicted of first-degree sale of a controlled substance and second-degree possession of a controlled substance. *See* Minn. Stat. § 152.021, subd. 1(1) (requiring a person to possess a total weight of ten grams or more to be guilty of the offense); Minn. Stat. § 152.022, subd. 2(a)(1) (requiring a person to possess a total weight of six grams or more to be guilty of the offense).

Second, a field test was conducted on all three samples at the time they were discovered and they all tested positive for methamphetamine. Our courts have allowed non-scientific evidence relating to identity and weight of an alleged contraband to be sufficient to support a conviction. *See State v. Olhausen*, 681 N.W.2d 21, 28-29 (Minn. 2004) ("[C]ircumstantial evidence and officer testimony may be presented to the jury to attempt to prove the identity of [a] substance."). Here, Officer Pucely testified that, based on his experience and training, the contraband recovered looked like methamphetamine. He had experience conducting field tests on contraband and testified that the substances field-tested positive for methamphetamine. Additionally, there is sufficient circumstantial evidence for a reasonable person to conclude that appellant possessed methamphetamine at the time of incident. Officers observed appellant carrying a small bag in his hand before he got into T.T.'s vehicle. T.T. testified that she picked up appellant that evening to purchase methamphetamine. The small bag that contained the methamphetamine was discovered underneath the passenger seat where appellant was seated. Because appellant has not established that the admissibility of the

12

methamphetamine affected his substantial rights, he is not entitled to relief on this ground.[1]

### III. The evidence is sufficient to support appellant's conviction of first-degree sale of methamphetamine.

Appellant next contends that the evidence was insufficient to convict him of first-degree sale of ten grams or more of methamphetamine because the uncontroverted testimony established that T.T. only intended to buy a half gram of methamphetamine from appellant that evening and T.T. testified that she never possessed more than one gram at a time. We disagree.

> In assessing the sufficiency of the evidence, we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted.

*State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). "The jury's verdict will be upheld if, giving due regard to the presumption of innocence and to the state's burden of proof beyond a reasonable doubt, the jury could reasonably have found the defendant guilty." *Id.* (quotation omitted). "[R]eview [of] criminal bench trials [is] the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *State v. Hough,* 585 N.W.2d 393, 396 (Minn. 1998).

Appellant was convicted of sale of a controlled substance crime in the first degree which provides that "[a] person is guilty of controlled substance in the first degree if:

---

[1] Because we determine that any purported error did not affect appellant's substantial rights, we need not reach the issue of whether the error was plain. *See Montanaro*, 802 N.W.2d at 732.

(1) on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing . . . methamphetamine." Minn. Stat. § 152.021, subd. 1(1). The definition of "sale" includes possession with the intent to sell. Minn. Stat. § 152.01, subd. 15a(3) (2010).

The state offered both direct evidence and circumstantial evidence to prove that appellant possessed more than ten grams of methamphetamine with the intent to sell. T.T.'s testimony provided direct evidence of appellant's intent to sell methamphetamine that evening.

"A conviction based on circumstantial evidence warrants stricter scrutiny."[2] *State v. Smith*, 619 N.W.2d 766, 769 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). "While the law does not prefer direct evidence to circumstantial evidence, a conviction based on circumstantial evidence requires that the circumstances proved be consistent with an appellant's guilt and inconsistent with any other rational or reasonable hypothesis." *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015) (citations omitted).

When reviewing the sufficiency of circumstantial evidence, we apply a two-step process. *Silvernail*, 831 N.W.2d at 598. Our first task is to identify the circumstances

---

[2] It is unclear which standard of review we should apply when we are reviewing the sufficiency of the evidence that includes both direct and circumstantial evidence. In *State v. Silvernail*, our supreme court acknowledged as much, explaining that it presents a "broader question of the applicable standard for reviewing the sufficiency of the evidence when the [s]tate presents both direct and circumstantial evidence to obtain a conviction." 831 N.W.2d 594, 598 (Minn. 2013). However, it declined to resolve the dispute and applied the circumstantial-evidence standard, stating that "even under the more favorable [circumstantial-evidence] standard proposed by [defendant], the record contains sufficient evidence to support the jury's verdict." *Id.* Therefore, we also apply the circumstantial-evidence standard in this review.

14

proved, giving deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). Under this step, we assume that the fact-finder rejected the defendant's version of events. *See Al-Naseer*, 788 N.W.2d at 473.

Taken in the light most favorable to the verdict, the evidence established the following circumstances: (1) T.T. stated that appellant sold methamphetamine to her on prior occasions; (2) a bag found underneath the passenger seat of the vehicle where appellant was sitting contained three separate packages of methamphetamine and a digital scale; (3) Officer Bartholomew positively identified the bag containing the contraband as the one he saw appellant holding in the alley; (4) Officer Pucely testified that the amount of methamphetamine discovered was consistent with an amount for distribution and that digital scales are typically used to weigh the contraband prior to a sale.

The second step requires this court "to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). We determine that the circumstances proved are consistent with guilt. One can reasonably infer that appellant possessed the methamphetamine with the intent to sell some of it to T.T. that evening when he got into her car holding a bag that contained an amount of methamphetamine consistent with distribution and a digital scale. The circumstances proved are inconsistent with any rational hypotheses except that of guilt. Accordingly, the evidence is sufficient to support appellant's conviction of first-degree sale of a controlled substance.

15

**IV. The district court did not abuse its discretion in sentencing appellant to 189 months, the top of the presumptive sentencing range.**

Lastly, appellant argues that the district court abused its discretion when it sentenced appellant to the top of the presumptive range on the guidelines rather than the 158-month sentence recommended in the presentence investigation report. This court reviews sentences imposed by the district court for an abuse of discretion. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010).

A district court must impose the presumptive guidelines sentence absent "identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids." Minn. Sent. Guidelines 2.D (2012). Sentence ranges in the sentencing guidelines are presumed to be appropriate for the crimes to which they apply. *Id.* "All three numbers in any given cell [on the sentencing guidelines grid] constitute an acceptable sentence." *State v. Jackson*, 749 N.W.2d 353, 359 n.2 (Minn. 2008); *see also Delk*, 781 N.W.2d at 428 ("[A]ny sentence within the presumptive range for the convicted offense constitutes a presumptive sentence."). A district court does not have to explain its reasons for imposing a presumptive sentence, and we will not interfere with the district court's exercise of discretion when "the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. 1985). "[I]t would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

With appellant's seven criminal-history points and conviction of a severity level nine offense, the presumptive sentencing range under the Minnesota Sentencing Guidelines was between 135 and 189 months in prison. The district court sentenced appellant to 189 months in prison, the top of the range, but still a presumptive sentence. The district court indicated that it reviewed the presentence investigation and written submissions by appellant. We conclude that the district court did not abuse its discretion in sentencing appellant to the top of the presumptive range of 189 months.

**Affirmed.**