*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1039**

State of Minnesota,
Respondent,

vs.

Cedric Demon Pate,
Appellant.

**Filed December 28, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-12-10821

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the district court's order revoking his probation. We affirm.

## FACTS

In November 2012, appellant Cedric Demon Pate pleaded guilty to first-degree criminal sexual conduct involving his 11-year-old niece. The district court granted a downward dispositional sentencing departure, stayed execution of a 187-month prison sentence, and placed Pate on probation for ten years. The district court imposed several conditions of probation, including that Pate complete sex-offender treatment at Alpha Human Services (Alpha), have no contact with the victim, and have no unsupervised contact with minors without permission.

In February 2013, Pate admitted that he violated his probationary conditions by breaking Alpha's rules, which led to his suspension from the treatment program. The district court continued Pate on probation, based on the assumption that Alpha would accept Pate back into the program. The district court ordered Pate to serve 180 days in jail as a sanction for the probation violation.

In March 2015, Pate's probation officer filed a probation-violation report, alleging that Pate violated the conditions of probation by being terminated from sex-offender treatment at Alpha, by having contact with the victim, and by having unauthorized, unsupervised contact with a minor.

Pate denied the allegations, and the district court held an evidentiary hearing. The district court heard testimony from a number of witnesses, including Pate's probation officer, Michelle Meyer, Pate's case supervisor at Alpha, Dr. Alexis Kindelspire, and Pate. The district court also received several exhibits, including an Alpha termination summary

prepared by Dr. Kindelspire. After hearing the testimony and reviewing the exhibits, the district court stated:

> I find that the violation that has been proven by clear and convincing evidence is that . . . you failed to successfully complete sex offender treatment. You were ordered to that treatment by [the sentencing judge]. And you were placed on probation. You had a probation violation. And were given the intermediate sanction of 180 days at the workhouse and ordered back to Alpha. At this point Alpha has terminated you and that is no longer an option because they will not take you back.
>
> It appears . . . that you've been given a couple of chances at least to successfully complete that treatment and you've not been able to do that. I do find that the violations are intentional and inexcusable and that the need for confinement outweighs the policies favoring probation. Confinement is necessary to protect the public from further criminal activity.
>
> This is a serious case, Mr. Pate, it was [first-degree criminal sexual conduct]. And it would unduly depreciate the seriousness of the probation if your probation were not revoked.

The district court revoked Pate's probation and executed his sentence. Pate appeals.

## D E C I S I O N

When revoking probation, the district court must "(1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Pate contends that the district court's order revoking his probation must be reversed because the court did not

3

find, and the evidence did not prove, that the violation was intentional or inexcusable, or that the need for confinement outweighs the policies favoring probation.

A district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. But district courts must make "fact-specific records setting forth their reasons for revoking probation," and whether the district court made the required *Austin* findings is a question of law, which appellate courts review de novo. *State v. Modtland*, 695 N.W.2d 602, 605, 608 (Minn. 2005).

Pate challenges the district court's finding regarding the second *Austin* factor. As to that factor, Dr. Kindelspire testified that Pate was terminated from the treatment program at Alpha "due to his dishonesty." Dr. Kindelspire testified that Pate reported that he was employed as a car detailer four days a week at two locations, but his employers at those locations told Pate's probation officer that Pate had not worked there for months. Dr. Kindelspire further testified that Pate reported sexual involvement with two women, but two weeks later told her that "he was just joking" and had not had sexual contact with either woman. Dr. Kindelspire's termination summary indicates that Pate took a polygraph examination, during which the examiner asked: "Other than [a woman with whom Pate had a known relationship], have you sexually touched anyone else since starting treatment?"; and "Have you sexually touched anyone else since starting treatment that you haven't told your therapist about?" Pate responded "no" to both questions, and the examiner reported that "no deception was indicated."

Pate testified that he did not lie about his employment. He testified that his employers did not confirm that he worked for them because they paid him with cash and did not want to get in trouble. Pate acknowledged that he told Dr. Kindelspire that he had sexual encounters with two women, but he claimed that he was "just joking about that."

Pate argues that the district court "needed to resolve the fact issue of whether Pate had or had not been dishonest about his employment and his sexual involvement with women in order to determine whether the violation—termination [from treatment] based on dishonesty—was intentional or inexcusable." Pate further argues that "[w]hether the violation was intentional or inexcusable depend[s] on whether the court credited [Dr.] Kindelspire's testimony or Pate's testimony." He suggests that this court remand for the district court to make findings of fact regarding this issue.

Further fact findings are not necessary to establish that Pate was dishonest with Dr. Kindelspire. Pate testified that he falsely reported to Dr. Kindelspire that he engaged in sexual conduct while in treatment. Pate's characterization of the report as a "joke" does not change the fact that it was false. Thus, undisputed record evidence supports the district court's finding that Pate's discharge from treatment was inexcusable. *Cf. State v. Kvam*, 336 N.W.2d 525, 528 (Minn. 1983) (stating that, when reviewing a pretrial suppression hearing, a remand for findings is not necessary when there is "no conflict in the evidence and the trial court's conclusions were consistent with the evidence").

Pate also challenges the district court's finding regarding the third *Austin* factor. He argues that the district court "did not evaluate any of the three criteria used to determine whether the need for confinement outweighs the policies favoring probation." In assessing

5

the third *Austin* factor, the supreme court has stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Modtland*, 695 N.W.2d at 607 (quoting *Austin*, 295 N.W.2d at 251). "The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted).

The district court evaluated two of the three factors. The district court explained that confinement is necessary to protect the public from further criminal activity and that "it would unduly depreciate the seriousness of the probation if . . . probation were not revoked." The district court appropriately took note of the seriousness of Pate's conviction, stating that Pate was convicted of first-degree criminal sexual conduct, "a serious case," and that he was given the opportunity to be placed on probation. *See* Minn. Sent. Guidelines III.B (2008) (stating that, when considering whether to revoke a stayed sentence, "[l]ess judicial forbearance is urged for persons . . . who were convicted of a more severe offense"). The district court further noted that after Pate was suspended from treatment in 2013, the court ordered an intermediate sanction and gave Pate another

6

opportunity to complete treatment at Alpha. The district court reasoned that Pate had been given two chances to complete treatment and that treatment at Alpha was no longer an option because Alpha would not take him back. *See State v. Hemmings*, 371 N.W.2d 44, 47 (Minn. App. 1985) (holding that it was not an abuse of discretion to revoke probation where "[a]ppellant was terminated from the sex offender treatment program because his response was found to be poor").

Pate argues that confinement was not necessary to protect the public from further criminal activity because his violation did not involve a new charge. But Pate's failure to successfully complete sex-offender treatment raises legitimate concerns regarding the possibility of recidivism. Dr. Kindelspire diagnosed Pate with antisocial personality disorder, opining that Pate will likely need "to age before his energy level wanes for engaging in criminal or problematic behaviors." Pate also argues that his "treatment had not failed" and that he "had been actively involved in and had advanced through [Alpha's] treatment program." Even if that is true, the fact remains that Pate was discharged from treatment at Alpha without successfully completing the treatment program, which is a significant probation violation.

Pate further argues that "there was no evidence that [Alpha] was the one and only sex offender treatment program in the entire state of Minnesota that was capable of meeting [his] treatment needs." But a finding that there are no other appropriate, available treatment options is not necessary to support a revocation. *See Austin*, 295 N.W.2d at 250 (stating that a district court must find that the "need for confinement outweighs the policies favoring probation" before revoking probation). Moreover the record does not contain

evidence that there is an alternative, appropriate sex-offender program that is willing to accept Pate. For that reason, we are not persuaded by Pate's argument that he "had plenty of time to complete a different program."

Lastly, Pate argues that execution of his sentence was "an extreme punitive consequence for non-criminal behavior" and the district court "did not explain how or why an intermediate sanction would be insufficient." But as the district court pointed out, it had already tried an intermediate sanction after Pate was suspended from sex-offender treatment for rule violations in 2013.

In sum, Pate was convicted of first-degree criminal sexual conduct, a severe offense under the Minnesota Sentencing Guidelines. The presumptive sentence for Pate's offense was an executed prison term. Pate was given the opportunity to avoid prison by successfully completing sex-offender treatment as a condition of probation. When Pate was suspended from treatment, the district court continued his probation, imposed an intermediate sanction, and gave Pate another opportunity to complete treatment. It is undisputed that Pate was permanently discharged from Alpha without successfully completing sex-offender treatment. That probation violation is significant given the underlying offense.

Although the district court's *Austin* findings are succinct, they address the necessary criteria, they are supported by the record, and they adequately convey the district court's reasons for revoking probation. The decision to revoke was not a reflexive reaction to a technical violation. Instead, it was based on a record that shows that Pate cannot be counted on to avoid antisocial activity. *See id.* at 251 (stating that revocation requires a showing

8

that the offender cannot be counted on to avoid antisocial activity).  We therefore hold that the district court did not abuse its discretion or otherwise err in revoking Pate's probation.

**Affirmed.**