Kent BERGE, petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C4–84–2181.

Supreme Court of Minnesota.

Oct. 18, 1985.

Hubert H. Humphrey, III, Atty. Gen., Blake, Shepard, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Wayne A. Pokorny, Excelsior, for respondent.

AMDAHL, Chief Justice.

The Commissioner of Public Safety revoked the driver's license of Kent Orrin Berge pursuant to the implied consent law, Minn.Stat. § 609.123, subd. 4 (1984), because the results of the chemical breath test to which Berge submitted, shortly after being arrested for driving while under the influence, indicated that he had an alcohol concentration of 0.10 or more. The trial court rescinded the revocation, and a panel of the Court of Appeals, 370 N.W.2d 75, by a 2–1 vote, affirmed the trial court. We grant the commissioner's petition for review, reverse the decisions of the Court of Appeals and the trial court, and reinstate the revocation of Berge's license. In so doing, we hold (1) that the officer was justified in stopping Berge, (2) that the officer's observations after the stop gave him probable cause to arrest Berge, and (3) that the trial court was not justified in rejecting the test results.

Shortly before 3:00 a.m. on August 13, 1984, Carver County Deputy Sheriff Rod Peddycoart, a 14-year veteran of law enforcement work, was driving north on a road toward the "Five Corners" intersection where Norwood and Young America meet. Three different roads meet at the intersection, which is regulated by stop signs. From a distance of ½ to ¾ blocks from the intersection he saw a car go through the intersection from his right to his left, that is, in a southwesterly direction on a road that runs southwesterly and northeasterly. The car should have stopped at a stop sign that is set back about 20 feet from the intersection. Peddycoart's view of the stop sign was blocked but he could see the car as it entered the intersection. By his estimate, the vehicle was traveling "at least" 20 to 25 miles per hour and possibly as high as 30 to 35 miles per hour when it entered the intersection. Based on these facts, Peddycoart concluded that the car had not stopped for the stop sign. That is, he "believed" on the basis of his experience as an officer that the car

could not have attained such a speed in 20 feet if it had stopped as required. Accordingly, he decided to stop the car. He was not able to catch up with the car and stop it until just after the car turned onto Highway 212, which is ⁴⁄₁₀ of a mile from "Five Corners." Based on this fact, Peddycoart believed that the car had exceeded the speed limit while driving on the stretch of road leading up to Highway 212. He also saw the car drive in the center of the road, that is, with part of the car to the left of the imaginary center line, there being no actual center line.

After stopping the car, he approached, asked to see the license of the driver, Berge, and told Berge that he had not stopped at the intersection at "Five Corners." When Berge said he had stopped, Peddycoart told him the basis for his conclusion. Berge replied that he had simply slowed down and that he continued driving without stopping when he saw that no one was coming. Peddycoart smelled a "strong odor of an alcoholic beverage" and noted that Berge's eyes were "watery and slightly bloodshot" and his speech "slightly slurred." Peddycoart then had Berge get out and perform three different field-sobriety tests. Berge did well on the finger-to-nose test, he "failed" the heel-to-toe test, and it was not until the third try that he was able to stand on just one foot and count to ten. Peddycoart then administered a preliminary screening test, which is calibrated to register "fail" if the driver's blood alcohol concentration is .11 or more. Berge failed that test.

Peddycoart then arrested Berge and transported him to the sheriff's office where Sergeant Robert Pagelkopf administered the breath test, which Berge agreed to take. The Intoxilyzer brand breath testing machine was used. The first breath sample was rejected by the machine as inadequate. The second breath sample was deemed poor but adequate. The reading obtained with this sample was .112, with a replicate reading of .117, and the reading obtained using another sample was .109, with a replicate reading of .110. The ma-

chine showed a correlation percentage of 96% among the four readings. The reading finally assigned to Berge was .10, which was obtained by taking the lowest of the four readings and dropping the third digit.

The two officers testified at the revocation hearing; Berge did not.

The trial court gave the following reasons for rescinding the revocation:

> I think the officers are very honest about it. Officer Peddycoart did not actually see the stop sign violation. He suspected there was one. He certainly could judge speed, thinking probably the fellow didn't stop, but he didn't see it. Nothing else suggests that the driving was all that bad. All the usual indications of being under the influence were extremely, extremely close in this case and not very strong from my hearing the testimony. The problems with the machine and the test result of .10 in view of the problems of the machine, really cast some question in my mind on that particular situation. So, in view of all those things, I'm going to rescind the proposed revocation by the Commissioner.

Asked by the attorney for the commissioner to clarify his reasons, the trial court stated:

> One is the probable cause to stop, probable cause to believe the defendant was under the influence and, quite frankly, the test results are—I'm not really totally satisfied in my mind that that machine was working properly. When you get these variances, I just don't think that it's very reliable. There are two tests, and different results all over the lot on it, and it doesn't, to me, make a lot of sense, and when the so-called "reliable" test comes out to be exactly .10, I'm not inclined to accept it, not given all the circumstances.

The commissioner appealed to the Court of Appeals, challenging each of the reasons given by the trial court for rescinding the revocation.

The majority opinion of the panel of the Court of Appeals addressed only the issue of the validity of the stop. The opinion reasoned that the determination that the stop was valid was a factual determination to which the "clearly erroneous" test applied. It reasoned that the determination was not clearly erroneous because the officer admittedly did not see Berge fail to stop, rather he "assumed" that Berge did not stop.

The dissent argued that the stop of the car was valid because Officer Peddycoart's observations provided a sufficient basis for his inference that Berge ran the stop sign. It also addressed the other issues, arguing that the officer's observations after the stop clearly gave him probable cause to arrest Berge and that the trial court was not justified in rejecting the Intoxilyzer test results.

■ 1. Whether the stop in this case was valid is, for the appellate court, purely a legal determination on given facts. This is because the trial court expressly credited the testimony of Deputy Peddycoart, stating that he was "very honest." Therefore, the appropriate approach to reviewing this case is not to use the "clearly erroneous" test—which is the test which would be used in the first instance if the trial court had rejected some of the deputy's testimony, *State v. Kvam*, 336 N.W.2d 525, 528–29 (Minn.1983)—but to simply analyze the testimony of the officer and determine whether, as a matter of law, his observations provided an adequate basis for the stop.

■ A stop is lawful if the officer is able to articulate at the revocation hearing (or at the omnibus hearing in a criminal prosecution) that he had a "particularized and objective basis for *suspecting* the particular persons stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981) (emphasis added). The officer makes his assessment on the basis of "all of the circumstances" and "draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." *Id.* at 418, 101 S.Ct. at 695.

■ Both the trial court and the Court of Appeals emphasized the fact that Peddycoart did not actually see Berge's car fail to

stop. The trial court drew a distinction between actually seeing a violation and merely "suspecting" one. The Court of Appeals drew a dichotomy between actually seeing a violation and "assuming" that a violation occurred. In fact, suspicion is all that is required, if the officer can sufficiently articulate the factual basis for his suspicion. However, here there clearly was more than a "suspicion" or an "assumption" that a violation occurred. The officer stated it not in terms of "suspicion" or "assumption" but in terms of "belief." The ultimate determinative issue in this case is not whether the officer saw the violation but whether his "belief" (or "suspicion" or "assumption") that the violation occurred was reasonably inferable from what he did see. We conclude that his inference was reasonable.[1]

 2–3. In the interests of judicial economy, we also decide the remaining two issues, issues that the majority opinion of the Court of Appeals did not address but which the dissent did address. We conclude, as did the dissent, that the officer's observations after the stop gave him probable cause to arrest Berge and that the trial court was not justified in rejecting the breath test results.

Reversed; revocation reinstated.

---

1. Even if the reason stated by the officer for stopping Berge was not adequate to justify the stop, we would uphold the stop if the record established that there was some *objective* basis for the stop. *State v. Pleas,* 329 N.W.2d 329, 332 (Minn.1983). Because of our conclusion that the reason given by the officer was adequate, we need not and do not decide whether any of the other facts provided an independent objective basis for the stop.