David William LEWIS, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. A06–1550.

Court of Appeals of Minnesota.

Aug. 21, 2007.

James L. Berg, Chaska, MN, for appellant.

Lori Swanson, Attorney General, Joan M. Eichhorst, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; SHUMAKER, Judge; and PARKER, Judge.

## OPINION

PARKER, Judge.*

Appellant challenges the district court's decision sustaining the revocation of his driver's license under the implied-consent law. Appellant argues that (a) his immediate change of mind regarding testing and agreement to take the breath test cured his initial refusal; and (b) the investigatory stop of his vehicle was unlawful because the officer's claim that he saw appellant fail to stop at a stop sign was not credible due to inconsistencies in the officer's testimony. We affirm.

## FACTS

On January 27, 2006, appellant David William Lewis was stopped by officer Ryan Lodermeier for failing to make a complete stop at a stop sign. Lodermeier observed indicia of alcohol consumption after appellant stepped out of his vehicle, and Lodermeier asked appellant to perform some field sobriety tests. After appellant failed the field sobriety tests and submitted to a preliminary breath test, he was arrested for driving under the influence and taken to the Plainview Police Station.

At the police station, Lodermeier read the implied consent advisory to appellant. Lodermeier offered appellant a choice of which test to take: blood, urine, or breath. Appellant chose a urine test, but Lodermeier was unable to find a urine-test kit, so he asked appellant to take a breath test. Appellant refused the breath test. Lodermeier informed appellant that refusal to take the test was a crime and asked appellant again if he would take the breath test and appellant responded, "Charge me." Lodermeier testified that he gave appellant two or three opportunities to take the test, and appellant refused. Lodermeier reminded appellant more than once that refusal to take the test was a crime.

Lodermeier contacted the dispatch center to confirm it had room for one male, retrieved his recording equipment and paperwork for a DUI refusal, and then returned to appellant. Lodermeier testified that this process took approximately nine

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

to eleven minutes. It was not until after Lodermeier placed appellant in handcuffs to transport him to jail that appellant said, "[Y]ou know, I'll take the test." Lodermeier informed appellant that he had given him several opportunities to take the test and that he had refused each time, and that the implied-consent-advisory period was over.

Appellant's refusal to take a breath test led to the revocation of his driving privileges. Appellant sought judicial review of the revocation order. The implied-consent hearing was held, and the district court sustained the revocation of appellant's driving privileges. This appeal follows.

## ISSUES

1. Did the district court err in ruling that appellant's initial refusal to take the breath test was not cured by his subsequent offer to take the test.

2. Did the district court err in finding that appellant failed to stop at a stop sign?

## ANALYSIS

### 1. Refusal to take the breath test

Appellant argues that the district court erred in determining that his initial refusal to take the breath test was not cured by his subsequent change of mind and agreement to take the test. The Minnesota Supreme Court has stated that the general rule is that an initial refusal to submit to testing cannot be cured by a subsequent agreement to be tested. *Nyflot v. Comm'r of Pub. Safety*, 369 N.W.2d 512, 517 n. 4 (Minn.1985). This court has consistently held that a subsequent change of heart does not revoke an initial refusal, even when a relatively short period of time has elapsed between the initial refusal and the reconsideration except for an "almost immediate" change of mind. *See Palme v. Comm'r of Pub. Safety*, 541 N.W.2d 340, 342–44 (Minn.App.1995) (applying general rule and noting corollary applicable when change of mind is "almost immediate"); *see also Parsons v. Comm'r of Pub. Safety*, 488 N.W.2d 500, 502–03 (Minn.App.1992) (concluding that refusal not revoked when driver changed her mind nine minutes later).

In *Schultz v. Comm'r of Pub. Safety*, the officer only had time to mark a refusal on the form before the driver changed his mind. 447 N.W.2d 17, 18 (Minn.App.1989). The court held that because the "change of mind was almost immediate, and was not separated from his initial response by any substantial time, place, or a telephone call to counsel or a friend," the police should have accepted the driver's change of mind. *Id.* at 19.

■■■ Lodermeier testified that appellant's change of mind was not immediate but took more than some nine to eleven minutes. It is undisputed that appellant refused the test more than once. Lodermeier provided appellant with information regarding the consequences for not taking the test, and appellant's refusal was clear. Once an officer has given the relevant information on the consequences of refusing to take a chemical test for intoxication, a driver's clear refusal that is not immediately withdrawn constitutes a refusal and precludes a change of mind. The district court did not err in determining that appellant's change of mind did not cure his initial and subsequent refusals to take the test for intoxication.

Appellant contends that Lodermeier's testimony is inconsistent with the police report, which was referred to during cross-examination. The record on appeal consists of documents "filed in the trial court." Minn. R. Civ.App. P. 110.01. A search of the district court file reveals that it does not include the police report. Thus, the

police report is not before us, and without the report itself, we cannot evaluate appellants' contention.

### 2. *Reasonable suspicion*

 Appellant argues that the police lacked a reasonable, articulable suspicion to stop him. "In reviewing a district court's determinations of the legality of a limited investigatory stop, we review questions of reasonable suspicion de novo." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000); *see also Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985) (applying standard of review in driver's license revocation proceeding).

 The United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. An investigatory stop does not violate the prohibition against unreasonable search and seizure if the officer has a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, (1968). Minnesota cases require very little justification for an investigatory stop. *See, e.g., State v. George*, 557 N.W.2d 575, 578 (Minn.1997); *State v. Pike*, 551 N.W.2d 919, 921–22 (Minn.1996). The proper inquiry is whether an officer, under the totality of the circumstances at the time of the stop, had a particular and objective basis for suspecting the person stopped of criminal activity. *Berge*, 374 N.W.2d at 732.

 Lodermeier testified that appellant failed to come to a complete stop at a stop sign. The district court found that rolling through a stop sign was a valid basis for stopping appellant. Appellant concedes that if it were true that he rolled through a stop sign, that would be sufficient to support a stop, however, appellant argues that Lodermeier's testimony was not credible. Appellant contends that the inconsistencies in Lodermeier's testimony render his testimony not credible. Inconsistencies in testimony do not require reversal; they are merely factors to consider when making credibility determinations, which is the role of the fact-finder. *State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App.2004), *review denied* (Minn. Aug. 17, 2004). The district court credited Lodermeier's testimony, and we defer to the district court's credibility determinations. *See State v. Miller*, 659 N.W.2d 275, 279 (Minn.App.2003) (stating that weight and believability of witness testimony is issue for district court, and appellate court defers to district court's credibility determinations).

### DECISION

Because appellant clearly and unequivocally refused to submit to testing for a reasonable amount of time, the district court did not err in determining that this refusal could not be cured by a subsequent change of mind to take the test. And because the district court properly credited the officer's testimony that appellant did not come to a complete stop, the officer had a reasonable, articulable suspicion to stop appellant.

**Affirmed.**