*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0964**

Nicholas James Heinz, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 25, 2016
Affirmed
Peterson, Judge**

Sibley County District Court
File No. 72-CV-15-18

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, PLLC, Roseville, Minnesota
(for appellant)

Lori Swanson, Attorney General, Peter D. Magnuson, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Kirk, Judge; and Jesson,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from an order sustaining the revocation of his driver's license for
refusing to submit to a chemical test, appellant argues that (1) his seizure was
unconstitutional because the deputy who stopped him did not have a reasonable articulable

suspicion that he was engaged in criminal activity when he was stopped; (2) his Fifth Amendment right against self-incrimination was violated when the deputy asked him whether he would submit to a chemical test; and (3) the criminalization of test refusal violates constitutional due-process guarantees and the prohibition against unreasonable searches and seizures. We affirm.

## FACTS

On Saturday, December 27, 2014, at 12:59 a.m., Sibley County Sheriff's Deputy Alex Nelson responded to an unidentified-citizen's complaint about a possible underage drinking party at a house in Green Isle. As Nelson approached the house on foot, he saw a man walking away from the house. Nelson recognized the man because he had previously had contact with him regarding a probation-violation issue. The man appeared to be intoxicated and stated that he had been at the house that Nelson was investigating.

Nelson then saw a second man, later identified as appellant Nicholas James Heinz, leave the house and get into a truck that was parked on the dead-end street in front of the house. As Nelson watched the truck, he noticed that the truck's rear license plate was completely covered with snow, which made it impossible to read any part of the license number, and that the truck was weaving as it backed down the length of the dead-end street. Nelson thought that the driver was possibly inexperienced to drive that distance in reverse. Nelson testified at the implied-consent hearing that he could have ticketed Heinz for having an obstructed license plate.

Nelson, who was wearing a deputy-sheriff's uniform, walked over to Heinz's truck and saw that the driver "appeared youthful," which, Nelson explained, meant that the driver

2

appeared to be "[y]ounger, around the age of under 21." Nelson asked the driver to stop, and Heinz stopped alongside Nelson. Heinz did not roll down the window, so Nelson opened the door when Heinz unlocked it. Heinz stated that he had had one beer and that he was 21 years old. Heinz produced his driver's license, which confirmed that his age was 21.

Nelson smelled the odor of an alcoholic beverage coming from the truck's passenger compartment. In the police report, Nelson described Heinz as "the lone male driver," and no evidence indicates that there was a passenger in the truck. Nelson asked Heinz to step out of the truck and perform field sobriety tests. Based on Heinz's performance on the tests, Nelson suspected that Heinz was impaired. Heinz refused to submit to a preliminary breath test (PBT), and Nelson arrested him for driving while impaired (DWI). After being arrested, Heinz requested a PBT, which showed an alcohol concentration of .084.

Nelson brought Heinz to the Sibley County jail and read the implied-consent advisory to him. As part of the advisory, Nelson informed Heinz of his right to consult with an attorney and the consequences of taking or refusing a test to determine whether he was under the influence of alcohol. Heinz stated that he understood his rights and that he wanted to contact an attorney. Heinz asked Nelson for legal advice. When Nelson said that he could not provide legal advice, Heinz stated that he did not want to contact an attorney and that he was terminating his attorney time at that point.

Nelson then asked Heinz to submit to a urine or blood test to determine the presence of alcohol. Nelson did not ask Heinz to submit to a breath test because he was not certified to operate the breath-testing machine and the deputies who were certified were not

3

available to administer a test. Heinz refused to submit to testing and stated that he was refusing because Nelson "unreasonably stopped" his vehicle.

Respondent commissioner of public safety revoked Heinz's driver's license under Minn. Stat. § 169A.52, subd. 3 (2014) (providing for license revocation upon certification by peace officer that there is probable cause to believe driver was impaired and that driver refused to submit to chemical test). Heinz petitioned the district court to rescind the revocation. The district court determined that Nelson was justified in stopping Heinz's truck and that Nelson's failure to obtain a search warrant did not justify Heinz's test refusal. Accordingly, the court sustained the revocation of appellant's license. This appeal follows.

## D E C I S I O N

## I.

Heinz argues that the obstruction of his truck's rear license plate by snow was not a valid basis for a traffic stop because the obstructed license plate was not a violation of law. But the district court made no finding of fact regarding the license plate and did not rely on the obstructed license plate when it determined that there was a valid basis for the traffic stop. Instead, the district court found:

> Here, the confirmed report of underage drinking in the immediate vicinity, the youthful appearance of the driver (later determined to be 21 years of age) and the weaving as the pickup backed down the street all combined with Deputy Nelson's experience as a law enforcement officer to give him sufficient articulable facts to justify the minor intrusion of stopping the vehicle and making contact with the driver.

This court will not reverse the district court's factual findings unless they are clearly erroneous. *Ekong v. Comm'r of Pub. Safety*, 498 N.W.2d 319, 321 (Minn. App. 1993).

4

Once the facts are established, the existence of a reasonable suspicion to support a stop is a question of law, which we review de novo. *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 594 (Minn. App. 2007); *see also Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn. 1985) (explaining that, on established facts, the legality of a stop is a question of law).

A police officer may conduct a brief investigatory stop of a motor vehicle when the officer has a reasonable, articulable suspicion of criminal activity. *State v. Setinich*, 822 N.W.2d 9, 12 (Minn. App. 2012). "The reasonable-suspicion standard is not high" and is "less demanding than the standard for probable cause." *State v. Diede,* 795 N.W.2d 836, 843 (Minn. 2011) (quotations omitted). "The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike,* 551 N.W.2d 919, 921–22 (Minn. 1996) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). The court considers the events leading up to the stop to decide whether the totality of the circumstances, "viewed from the standpoint of an objectively reasonable police officer, amount[s] to reasonable suspicion" of criminal activity. *State v. Martinson,* 581 N.W.2d 846, 850 (Minn. 1998).

The commissioner does not dispute that Heinz was stopped when Nelson, wearing a sheriff's uniform, instructed Heinz to stop. *See State v. Lopez*, 698 N.W.2d 18, 22 (Minn. App. 2005) (concluding that officer seized appellant by partially blocking appellant's car with the squad car, activating emergency lights, ordering appellant to unlock the door, and

opening the car door). The commissioner argues that the stop was legal based on the tip that an underage drinking party was occurring at the house that Heinz had just left.

Nelson testified that an unidentified citizen approached his partner and reported that underage kids were drinking at the house. The partner then called Nelson, who went to the house with another officer to investigate. Uncorroborated anonymous tips that are "provided to police face to face are sufficiently reliable to justify an investigative stop, because the tipster puts himself in a position where his identity might be traced, and he might be held accountable for providing any false information." *State v. Balenger,* 667 N.W.2d 133, 138 (Minn. App. 2003), *review denied* (Minn. Oct. 21, 2003). Furthermore, the unidentified-citizen's tip was corroborated when Nelson spoke to the man that he knew who had just left the house. *See United States v. Briley*, 726 F.2d 1301, 1306 (8th Cir. 1984) (stating that "[a]n anonymous tip from an informer may serve as a basis for probable cause as long as its reliability is established through corroboration").

An investigating officer may draw inferences and make deductions based on the totality of the circumstances, including "the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). In addition to the reliable tip, Nelson knew the following information when he stopped Heinz: (1) the time was about 1:00 a.m. on a Saturday; (2) Heinz and another man left the house separately; (3) the other man appeared intoxicated; and (4) Heinz "appeared youthful," and

his driving manner indicated a possibly inexperienced driver, which suggested that Heinz might be underage.

Viewed from the standpoint of an objectively reasonable police officer, these specific, articulable facts, taken together with rational inferences from these facts, established a reasonable suspicion that Heinz was an underage drinker. *See* Minn. Stat. § 340A.503, subd. 1(a)(2) (2014) (stating that "[i]t is unlawful for any . . . person under the age of 21 years to consume any alcoholic beverages"). This reasonable suspicion of underage drinking reasonably warranted Nelson's stopping Heinz to investigate.

Heinz makes several assertions challenging the weight and credibility of Nelson's testimony. Even inconsistencies in testimony do not require reversal; rather, they are factors to consider when making credibility determinations, which is the fact-finder's role. *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 594 (Minn. App. 2007). This court defers to the district court's assessment of the weight and credibility of witness testimony. *Id.*

**II.**

Heinz argues that his right against self-incrimination must apply to the implied-consent advisory because the implied-consent process is inextricable from the criminal DWI proceeding, and the crime of test refusal exists only by reference to the implied-consent law. But because Heinz did not raise this issue in the district court, we will not consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that "a reviewing court must generally consider only those issues that the record shows were

7

presented and considered by the trial court in deciding the matter before it" (quotation omitted)).

**III.**

In the district court, Heinz acknowledged that, in *State v. Bernard*, the Minnesota Supreme Court held that when a driver is arrested for driving while impaired, a warrantless search of the driver's breath is permissible as a search incident to arrest. 859 N.W.2d 762 (Minn. 2015), *cert. granted*, 136 S. Ct. 615 (Dec. 11, 2015). But he argued that his case is distinguishable from *Bernard* because it does not involve a breath test and the search-incident-to-arrest exception that the supreme court recognized in *Bernard* does not permit a warrantless blood or urine test. The district court was not persuaded by Heinz's attempt to distinguish the facts of his case from the facts in *Bernard*, and it concluded that the failure to obtain a search warrant for a blood or urine test did not justify Heinz's refusal.

On appeal, Heinz again argues that the search-incident-to-arrest exception that was applied in *Bernard* does not justify warrantless blood or urine testing. In *Bernard*, the supreme court stated that "the question of a blood or urine test incident to arrest is not before us, and we express no opinion as to whether a blood or urine test of a suspected drunk driver could be justified as a search incident to arrest." *Id.* at 768 n.6. After the district court issued its decision in this case, this court decided in two cases that, in the context of criminal prosecutions for violating the test-refusal statute, Minn. Stat. § 169A.20, subd. 2 (2014), warrantless searches of a driver's blood or urine would not have been permissible as searches incident to arrest under the Fourth Amendment. *State v. Trahan*, 870 N.W.2d 396, 402 (Minn. App. 2015) (search of blood), *review granted* (Minn.

8

Nov. 25, 2015); *State v. Thompson*, 873 N.W.2d 873, 877 (Minn. App. 2015) (search of urine), *review granted* (Minn. Feb. 24, 2016).

But, in the context of an implied-consent proceeding challenging the revocation of a driver's license under Minn. Stat. § 169A.52, subd. 3(a) (2014), for refusing to submit to a urine test, this court has held that the implied-consent statute does not violate the Fourth Amendment. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717 (Minn. App. 2014). In *Stevens*, a driver who was arrested on suspicion of driving while impaired refused to submit to a urine test after an officer read her the implied-consent advisory. *Id.* at 720-21. The commissioner of public safety revoked the driver's license, and the driver petitioned for judicial review of the revocation. *Id.* at 721. The driver argued "that Minnesota's implied-consent statute violates the unconstitutional-conditions doctrine because it imposes on a driver a choice between, on the one hand, relinquishing the Fourth Amendment right to be free from an unreasonable search and, on the other hand, relinquishing a license to drive a motor vehicle." *Id.* at 723.

In *Stevens*, this court noted that the Minnesota Supreme Court has explained the unconstitutional-conditions doctrine as follows:

> [A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Id.* (alteration in original) (quoting *State v. Netland*, 762 N.W.2d 202, 211 (Minn. 2009)).

For several reasons, this court concluded in *Stevens* "that Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing." *Id.* at 731.

This court's reasons included that (1) the implied-consent statute does not "authorize a search that violates the Fourth Amendment because the implied-consent statute, by itself, does not authorize any search given the facts of [the] case"[1]; (2) even if the implied-consent statute were to authorize a search, the search would not violate the Fourth Amendment because "the state's strong interest in ensuring the safety of its roads and highways outweighs a driver's diminished privacy interests in avoiding a search following an arrest for DWI"; and (3) even if a search of the driver's blood, breath, or urine pursuant to the implied-consent statute would violate the Fourth Amendment, the driver

---

[1] This court noted in *Stevens*:

> The implied-consent statute authorizes a search of a driver's blood, breath, or urine without the driver's express consent in two circumstances. The first is when there is probable cause to believe that the driver has committed the offenses of criminal vehicular homicide or criminal vehicular operation. Minn. Stat. § 169A.52, subd. 1. In that situation, an officer may require a test "despite the person's refusal." Minn. Stat. § 169A.52, subd. 1. The second circumstance is when the driver is unconscious or otherwise incapable of consenting to chemical testing or refusing to consent. Minn. Stat. § 169A.51, subd. 6.

*Id.* at 725 n.3 (citations omitted). Neither of these circumstances was present in *Stevens*, and neither is present here.

would not be able to show that the implied-consent statute is sufficiently coercive. *Id*. at 725-30.

Heinz does not explicitly invoke the unconstitutional-conditions doctrine in his argument to us, but he does argue that "the legislature does not have the constitutional authority to enact a permissive, offense-specific exception to the warrant requirement" and "[b]y overriding the warrant requirement with the Implied Consent Law, the legislature conditions driving on Minnesota roads on the surrender of the right to due process." The gist of these arguments is the same as the arguments raised by the driver in *Stevens*. Heinz does not address, or even acknowledge, *Stevens*, and we see no basis for refusing to apply this court's reasoning in *Stevens* to the revocation of Heinz's driver's license because of his refusal to submit to urine or blood testing.

**Affirmed**.

11