*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1997**

State of Minnesota,
Respondent,

vs.

Alexis Elview Hancock,
Appellant.

**Filed October 17, 2016
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-14-32114

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Worke, Judge; and Ross, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges her conviction on a charge of depriving her child's father of his parental rights, arguing that the state failed to present sufficient evidence. Because there is sufficient evidence in the record to support the conviction, we affirm.

### FACTS

When their daughter L.P. was born in 2009, appellant Alexis Hancock and R.P. were in a romantic relationship. The relationship ended in 2013, and the district court issued an order providing that appellant and R.P. would have joint legal and physical custody of L.P., who would spend from January 1 to June 30 of each year with appellant in Missouri and from July 1 to December 31 with R.P. in Minnesota. Appellant, who had moved to St. Louis, MO, with L.P., would be responsible for transporting her.

Prior to July 2014, R.P. was incarcerated for a brief period because of a DWI. He was scheduled for release on July 5 and arranged for his mother to care for L.P. from her arrival on July 1 until July 5.

But appellant failed to bring L.P. to Minnesota on July 1, as required by the 2013 court order, and appellant did not appear for a scheduled hearing later in July 2014. R.P. notified the district court that appellant was not in compliance with the 2013 order.

In late August 2014, R.P. went to St. Louis to find L.P. He contacted appellant by phone; she said she was then in Illinois but would bring L.P. to R.P. in St. Louis. But she did not bring L.P. to St. Louis or come there herself, and R.P. returned to Minnesota.

Because of appellant's noncompliance with the 2013 order, R.P. was awarded temporary full legal and physical custody of L.P. in September 2014, and law enforcement was directed to look for her. In November 2014, U.S. marshals located L.P. in St. Louis. R.P. went to St. Louis and was reunited with her.

Because R.P. did not have L.P. from July to November, appellant was charged with deprivation of parental rights in violation of Minn. Stat. § 609.26, subd. 1(3) (2014). Following a bench trial, the district court found her guilty. She was placed on probation for three years. She challenges her conviction, arguing that the district court's conclusion that she intended to deprive R.P. of his court-ordered parenting time is not supported by sufficient evidence.

## DECISION

A person may be charged with a felony who "*intentionally* . . . fails to return a minor child . . . to the parent in violation of a court order, where the action manifests *an intent* substantially to deprive that parent of rights to parenting time or custody." Minn. Stat. § 609.26, subd. 1(3) (emphasis added). Intent is a state of mind and is "generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances." *State v. Moua*, 678 N.W.2d 29, 39 (Minn. 2004). "Circumstantial evidence used to form [intent] is entitled to the same weight as other evidence and will be sufficient to sustain a conviction as long as the circumstances proved are consistent with a hypothesis of guilt and inconsistent with any rational or reasonable hypothesis other than guilt." *Id.* at 40.

3

Appellant was cross-examined during her bench trial.

> Q. [Y]ou knew based on that [2013] family court order that you were obligated under the law to bring your daughter back to Minnesota on July 1st, 2014 and transfer custody to [R.P.], correct?
>
> A. Yes, [R.P.].
>
> Q. And you are aware of the fact that that order says that the mother, you, are responsible for transportation, correct?
>
> A. Yes.
>
> Q. You did not bring your daughter back to Minnesota on July 1st, 2014, did you?
>
> . . . .
>
> A. Oh, 2014. Oh. No.
>
> Q. You didn't bring her back in August of 2014?
>
> A. No.
>
> Q. You didn't bring her back in September of 2014?
>
> A. No.
>
> Q. You didn't bring her back in October of 2014?
>
> A. No.
>
> Q. In fact, you never brought her back, did you?
>
> A. No.
>
> Q. You acknowledge the fact that [R.P.] came to St. Louis, looking for your daughter?
>
> A. Yes.
>
> Q. And you never gave custody of your daughter to him?
>
> A. Yeah. I was at work. He didn't wait.
>
> Q. Do you see anywhere in that court order that says, this depends on [M]om's work schedule?
>
> A. No. I never looked at – I just looked at the court order and I never look—That's my child.
>
> Q. You have an obligation to transfer custody of your daughter to [R.P.]. You did not do it, correct?
>
> A. Correct.

The district court concluded:

> [Appellant] claims that she retained and failed to return their daughter . . . because [R.P.] was incarcerated in July . . . and she had just started a new job in July so she could not drive the child back to Minnesota where [R.P.] lives. However, [under the court order, appellant] had to provide transportation for her

4

daughter to send her back to [R.P.]. Even if she was unable to do so for various reasons in July, she still could have done so in August, September, October, or November. [R.P.] was available during those months. He had made arrangements with day care and his mother to care for his child. [Appellant] was no longer new at her job and could have made arrangements—whether driving the child herself or transporting the child another way—so that she could comply with [a court] order she previously had been [obeying]. She also made no effort to return the child when [R.P.] came to her in St. Louis. Moreover, based on [appellant's] testimony, demeanor, and attitude, the court does not find that she intended to return the child to [R.P.] at any point because it was "her child."

This court will "defer to the district court's credibility determinations." *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 594 (Minn. App. 2007). Based on appellant's own testimony, the district court found that, from July to November 2014, she did not intend to comply with the court order and return L.P. to R.P.

Appellant argues that "[her] conduct is not consistent with that of an individual who has the requisite intent or purpose to deprive another parent of their child," but, as the district court found, failing to bring L.P. to Minnesota during the first five of the six months the court had ordered L.P. to spend with R.P. "manifests an intent substantially to deprive that parent of rights to parenting time [and] custody" in violation of Minn. Stat. § 609.26, subd. 1(3). Sufficient evidence supports the district court's conclusion that appellant manifested an intent substantially to deprive R.P. of his right to parenting time and custody.

**Affirmed.**