*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0666**

State of Minnesota,
Appellant,

vs.

Creighton Thomas Penn,
Respondent.

**Filed November 7, 2016
Reversed and remanded
Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CR-15-28632

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Francis J. Rondoni, Golden Valley City Attorney, Mark J. Schneider, Michael K. Johnson, Assistant City Attorneys, Chestnut Cambronne, P.A., Minneapolis, Minnesota (for appellant)

Mary F. Moriarty, Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Ross, Judge; and Rodenberg, Judge.

## U N P U B L I S H E D   O P I N I O N

**SMITH, TRACY M.**, Judge

The state appeals the district court's pretrial order suppressing all evidence obtained as a result of a traffic stop. The district court concluded that the trooper lacked reasonable

suspicion to justify the stop when the trooper heard squealing tires and observed a pickup truck nearly crash into the car ahead of it on a freeway. Because the district court erred in concluding that the trooper lacked reasonable suspicion, we reverse and remand.

## FACTS

Minnesota State Patrol Trooper Troy Utes was in his squad car on Interstate 394 around 4:45 a.m. on October 7, 2014, parked in a westbound lane that was closed to traffic. Road conditions were clear and dry, it was dark outside, and two of the three westbound lanes were closed due to construction. Traffic was light, and the average speed was about 45 to 55 miles per hour. The trooper was facing east, against the direction of traffic, with his vehicle's window down, talking with his sergeant. The sergeant was in his own squad car, facing west in the center lane. The center lane was also closed and was between the trooper and the open lane of traffic. While talking to the sergeant, the trooper heard the sound of squealing tires coming from the open lane. The trooper looked up to observe a black pickup truck nearly striking the vehicle in front of it.

The trooper's attention was drawn to the truck only after he heard the tires squealing, so he neither saw why the driver slammed on the brakes nor clocked the truck's speed. The trooper did not see any stopped vehicles on the road. The trooper made a U-turn, initiated a stop of the pickup truck, and identified respondent Creighton Thomas Penn as the driver and sole occupant. The trooper did not testify to any other unusual or suspicious conduct by the driver. The trooper testified that the stop was based on "following too close" or driving at a "speed faster than other traffic based on the construction zone." The trooper believed the squealing tires indicated that there was "something going on other than just

2

driving." The trooper told Penn that he stopped him because he "locked up" his tires and almost crashed into another car "right next to" the squad cars in the construction zone.

As a result of the traffic stop and resultant DWI investigation, Penn was charged with third-degree driving while impaired and third-degree operating a motor vehicle with an alcohol concentration of 0.08 or more.

Penn moved to suppress all evidence resulting from the traffic stop. Following an evidentiary hearing, the district court concluded that the trooper "lacked reasonable articulable suspicion to conduct a traffic stop" and granted Penn's motion to suppress.

The state appeals.

## D E C I S I O N

The state argues that the district court erred in granting Penn's motion to suppress because the trooper had reasonable, articulable suspicion to initiate the stop based on hearing tires squeal and seeing the truck brake suddenly and come close to colliding with another vehicle.

On an appeal by the state, we will not overturn a district court's pretrial suppression order unless the state has demonstrated "clearly and unequivocally" both that the district court erred in its judgment and that the district court's ruling has a "critical impact" on the state's ability to prosecute the case. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008); *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998). We review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo. *Gauster*, 752 N.W.2d at 502. Whether a search is justified by reasonable suspicion

3

is a legal determination that we review de novo. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The parties do not dispute that the "critical impact" element is satisfied, as suppression of the evidence here would lead to the effective dismissal of criminal charges. *Gauster*, 752 N.W.2d at 502. And neither party challenges the district court's factual findings. Thus, the only issue on appeal is whether the district court erred in concluding, based on its factual findings, that the trooper lacked reasonable, articulable suspicion to support the stop. *Burbach,* 706 N.W.2d at 487.[1]

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may initiate a limited investigatory stop without a warrant if he has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-80 (1968). An officer's observation of a violation of a traffic law, "no matter how insignificant the traffic law," is a sufficient basis for conducting a stop. *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004). However:

> An actual violation of the vehicle and traffic laws need not be detectable. The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was

---

[1] The parties disagree as to whether or how the "clear and unequivocal" standard applies to the question of legal error. Our reading of Minnesota case law is that the legal question of the constitutionality of a stop is subject to de novo review even on a pretrial appeal by the state. *See Gauster*, 752 N.W.2d at 502 (explaining that appellate courts review the district court's legal conclusions de novo but will reverse a pretrial suppression order "only if the state demonstrates clearly and unequivocally that the district court erred in its judgment"). Even if the "clear and unequivocal" standard applies to the question of legal error, we hold that the standard was met here and that the district court erred in suppressing the evidence.

based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

*State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). In determining whether the reasonable-suspicion standard has been met, courts "should consider the totality of the circumstances and should remember that trained law-enforcement officers are permitted to make inferences and deductions that might well elude an untrained person." *State v. Kvam*, 336 N.W.2d 525, 528 (Minn. 1983) (quotation omitted). However, an officer's "hunch, intuition, gut reaction, [or] instinctive sense" is insufficient to support a stop. *State v. Baumann*, 759 N.W.2d 237, 240 (Minn. App. 2009), *review denied* (Minn. Mar. 31, 2009).

The trooper testified that he stopped the car based on suspicion that Penn was "following too close" and driving at a "speed faster than other traffic based on the construction zone." Minnesota Statutes section 169.18, subdivision 8(a), prohibits a driver from "follow[ing] another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the conditions of the highway"; and section 169.14, subdivision 1, prohibits drivers from "driv[ing] a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions."

The district court found that the trooper heard squealing tires and then looked up to see Penn's truck "nearly rear-end" the vehicle in front of it. The freeway was reduced from three lanes to a single westbound lane due to construction, the traffic was light at 4:45 a.m., and road conditions were clear and dry. Traffic was traveling at an average speed of 45 to 55 miles per hour. The trooper did not see anything that caused Penn to need to suddenly

5

stop. We conclude that the totality of these circumstances gives rise to the reasonable suspicion that Penn's need to slam on the brakes to narrowly avoid colliding with the car ahead was due to his traveling too closely to the car in front of him or not driving reasonably and prudently given the construction conditions and the traffic flow in the single lane of traffic. Minn. Stat. §§ 169.14, subd. 1, 169.18, subd. 8(a).

In concluding that the trooper lacked reasonable, articulable suspicion to justify the stop, the district court explained that because the trooper did not observe Penn to be speeding or following another vehicle too closely, he "merely inferred that some sort of traffic violation must have occurred because [Penn] had to slam on his brakes to avoid colliding with another car." And, the district court reasoned, there are "other reasonable inferences" besides following too closely or driving too fast for conditions as to why Penn needed to slam on his brakes.

The state argues that the district court erred by concluding that the existence of other reasonable inferences negates reasonable, articulable suspicion when an officer does not observe but can reasonably infer criminal activity. We agree. In *Berge v. Comm'r of Pub. Safety*, our supreme court upheld an investigatory stop when an officer did not witness but reasonably inferred from a vehicle's speed through an intersection that the driver had run a stop sign. 374 N.W.2d 730, 733 (Minn. 1985). "[S]uspicion," the court observed, "is all that is required." *Id.* The determinative issue is not whether the officer saw the violation but whether his suspicion that the violation occurred "was reasonably inferable from what he did see." *Id.*

6

To distinguish *Berge*, the district court explained that *Berge* involved only one reasonable inference and here "there are other very likely explanations as to why [Penn] had to slam on his brakes," such as if another driver had slowed down quickly or cut in front of him when the bottleneck started. But the standard for an investigatory stop is not whether criminal activity was the only plausible explanation or even more plausible than other explanations. Instead, the officer only needs to have "articulable objective facts" that support "at least one inference of the possibility of criminal activity." *State v. Schrupp*, 625 N.W.2d 844, 845 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). *Berge* does not hold that an officer's reasonable suspicion is insufficient because there are other reasonable explanations for what the officer observed. *Berge*, 374 N.W.2d at 733 (concluding that the officer's inference that the driver was speeding was reasonable).

Here, the evidence shows that the trooper had reasonable, articulable suspicion of unlawful activity. Although the trooper's observations alone may not have amounted to sufficient probable cause to charge Penn with the suspected traffic violations, they created enough reasonable suspicion to justify the decision to stop and investigate. *See Anderson*, 683 N.W.2d at 823. Accordingly, we reverse the district court's order suppressing the evidence from the stop.

**Reversed and remanded.**